IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Fred Freeman, #235180,            )<br>                                   )<br>            Plaintiff,              )<br>                                   )<br>v.                                 )<br>                                   )<br>Ms. Haselden, Financial Accounting )<br>E.H. Cooper; Libby Priester, Business )<br>Office; and Warden Hagan,          )<br>                                   )<br>            Defendants.             )<br>_____) | CIVIL ACTION NO. 9:11-2113-DCN-BM<br><br>**REPORT AND RECOMMENDATION** |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was an inmate with the South Carolina Department of Corrections (SCDC),[1] alleges violations of his constitutional rights by the named Defendants. Plaintiff is a frequent filer of pro se litigation in this Court.

Pursuant to an Order issued September 11, 2012, all claims originally raised by Plaintiff in his Complaint were dismissed except for Plaintiff's claims arising out of his August 2009 grievance relating to allegedly improper deductions from his trust account, resulting in Plaintiff allegedly not being able to procure hygiene materials and/or pursue appeals of a court case. See Order (Court Docket No. 55); see also Court Docket No. 26, p. 5, n. 5. On March 11, 2013, Plaintiff filed a motion captioned as a "Dispositive" motion in which, although somewhat unintelligible,



---

[1]Plaintiff has, since the filing of this action, been released from incarceration. See Court Docket Nos. 87 and 88 (Change of Address Notices).

Plaintiff appears to seek judgment on his claims. Defendants thereafter filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 28, 2013.

As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on March 29, 2013, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff filed a response in opposition to the Defendants' motion on April 29, 2013.

These motions are now before the Court for disposition.[2]

**Background and Evidence**

With respect to the remaining claims from the Complaint as relate to the allegations set forth in Plaintiff's August 2009 grievance (ACI-0090-09), Plaintiff alleges in his verified Complaint[3] that, while he was an inmate at the Allendale Correctional Institution (part of the SCDC system), he was denied "hygiene materials" (identified as soap, toothpaste, razors, and shampoo) and that he was also denied access to the courts to complain about this deprivation. Plaintiff further alleges that the Defendants Hagan (Warden of the Institution), Priester (with the Prison Business Office) and Haselden (in the Accounting office) were all aware that he was being denied hygiene materials and access to the courts. Plaintiff complains that in December 2008 the Defendants sent

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

2



"9 cent[s]" to the U. S. District Court out of a deposit of twenty dollars, and then proceeded to "misappropriat[e]" Plaintiff's funds. Plaintiff alleges that as a result of the Defendants leaving a "balance" on his "card" (which he could not utilize at the canteen to purchase anything) he was denied necessary hygiene materials and items. Plaintiff further complains that if he is indigent, he is supposed to be issued hygiene materials as well as envelopes and paper once a month. In support of his allegations, Plaintiff has submitted a copy of Grievance ACI 0090-09, as well as some state court documents relating thereto. Plaintiff seeks monetary damages. See generally, Plaintiff's Verified Complaint, with attached Exhibits.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Ann Hallman, Chief of the Inmate Grievance Branch, who has attached to her affidavit a true and correct copy of Plaintiff's Grievance No. ACI -0090-09. In that grievance, which is dated August 11, 2009 (received August 14, 2009), Plaintiff complains that he was denied "hygiene indigent materials" on December 10, 2008. Plaintiff further complains that he deposited a $20.00 money order into his trust account, giving him a balance of $20.40, and that this money was then misappropriated by $4 being sent to the United States District and $4 sent to the Fourth Circuit Court of Appeals, for a total of $8 (or, possibly, that these sums were supposed to have been sent to the District and Circuit Courts, but were not, it not being very clear), and that prison officials were also refusing to inform the federal courts of this misappropriation. The Warden's response to Plaintiff's grievance is as follows:

> The court system has authorized SCDC to deduct court fees from any money you receive as long as you are left with $10.00 in your account when paying appellant/district costs, and $6.43 after paying state court fees. These deductions are made monthly and/or quarterly. Records indicate a money order was deposited into your account on 12-10-08 and your balance was $20.44. On 12-11-08, court-ordered fees (.09 cents) for the district court were deducted and on 01-06-09, state court fees

3



($2.00) were deducted leaving your account balance at $6.43. Deductions were made according to the court's mandate; funds are not being misappropriated. The $8.35 restitution hold is included in your account balance and you cannot spend it. In order to be declared indigent, your balance must be less than $6.43 for thirty (30) days. Records indicate your received an indigent kit on 02-13-09.

Plaintiff filed a Step 2 appeal[4] of the denial by the Warden of his Step 1 Grievance, with the decision on Plaintiff's Step 2 appeal being as follows:

Your concern has been reviewed. The appropriate deducts have been made from your E.H. Cooper account. You currently owe $4,071.67 in restitution and policy is clear on what deductions can be made from your account to return those funds to the State of South Carolina. Currently you owe to the Appellate Court $223.23 for the December 9, 2005 filing and $455.00 for the June 20, 2007 filing. You owe the District Court $345.93 for the May 30, 2006 filing, $337.40 for the November 7, 2006 filing and $350.00 for the May 9, 2009 filing. You owe the State Court $136.30 for the February 1, 2006 filing. This totals to $1,847.86 owed to the Courts. The funds are taken out of your E.H. Cooper account when you have the funds in the amount the Court and policy require. Due to the restitution hold of $8.35 on your account, you are provided a hygiene kit each month. Therefore, your grievance is denied.

See generally, Hallman Affidavit, with attached Exhibits.

The Defendant George Hagan has submitted an affidavit in which he attests that during the relevant time period he was the Warden at the Allendale Correctional Institution (until his retirement on December 2, 2009). Hagan attests that, as Warden, he did not have any direct responsibility for deciding which inmates were eligible to receive an indigent hygiene kit as directed by SCDC policy, nor did he have any direct responsibility for ensuring eligible inmates received indigent hygiene kits as directed by SCDC policy. Hagan attests that if an inmate had a complaint

---

[4]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step 1), the inmate may then appeal the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc. v. Francine Co, 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006).



regarding the non-issuance of a hygiene kit, it would typically be handled by a member of the commissary staff, and he would not have any knowledge about an inmate's complaint about the non-issuance of a hygiene kit unless it was brought to his attention by other SCDC personnel, directly from the inmate, or by a Request to Staff form addressed to him. Hagan attests that he first became aware of Plaintiff's concerns regarding his hygiene kit when he received a Request to Staff form from the Plaintiff February 17, 2009, a copy of which is attached to his affidavit as Exhibit A. Hagan attests that at the time he received this Request to Staff form, Plaintiff had already received a hygiene kit on February 13, 2009, as is shown by the commissary records for the relevant time period, a copy of which is attached to his affidavit as Exhibit B. See generally, Hagan Affidavit, with attached Exhibits.

The Defendant Elizabeth Priester has submitted an affidavit wherein she attests that she has been the Commissary Manager at the Allendale Correctional Institution since October 17, 2009, and that prior to that time she was the Inmate Grievance Coordinator (IGC). Priester attests that, as the IGC, she did not have any responsibility for deciding which inmates were eligible to receive an indigent hygiene kit as directed by SCDC policy, nor did she have any responsibility for ensuring that eligible inmates received indigent hygiene kits. Priester further attests that, as the IGC, she did not have any knowledge of Plaintiff's complaint about the non-issuance of a hygiene kit in January 2009. See generally, Priester Affidavit.

Finally, the Defendants have submitted an affidavit from Noel Hebert, who attests that he is an Accounting Manager in the Division of Finance, Financial Accounting Branch, which manages inmates' E.H. Cooper trust funds. Hebert attests that, prior to his assuming that position, the position was held by the Defendant Michelle Haselden, who has since retired. Hebert attests that

5



his and Haselden's job responsibilities were/are the same, which includes supervising E.H. Cooper disbursements and deposits, as well as handing institutional inquires and inmate correspondence regarding E.H. Cooper transactions. Hebert attests that every 30 days an indigent inmate is entitled to a hygiene pack, which during the relevant time period consisted of various hygiene products as well as one pencil (which would be exchanged for a new one when it wears out), envelopes and paper. Hebert attests that an inmate is considered to be indigent if the inmate's beginning E.H. Cooper balance, plus any deposits received, in the previous 30-day period is less than the cost of the supplies in the hygiene pack. For the time period between November 2008 and February 2009, the threshold used by the SCDC to determine indigent status was $6.43. If an inmate does not qualify for a hygiene pack, he may pay for such supplies out of his E.H. Cooper account.

        Hebert attests that indigent inmates receive replacement hygiene packs on the first scheduled distribution date after showing up on the dorm report as being indigent; however, his position of Accounting Manager is not involved with the issuance of hygiene packs or deciding whether or not a particular inmate is entitled to a hygiene pack. Hebert attests that he has conducted a through review of the records of the Financial Accounting Branch, and these records do not indicate that the Plaintiff made any inquires to Haselden or to anyone else in the financial accounting branch about his allegation that he did not receive an indigent hygiene pack in January 2009 or about any concerns with his E.H. Cooper account. Hebert attests that Plaintiff's E.H. Cooper records indicate that, from November 2008 to February 2009, Plaintiff had a beginning balance of .44 cents with a money order deposit on December 10, 2008, bringing his balance to $20.44. Thereafter, his account shows withdrawals for U. S. District Court restitution of .09 cents on December 11, 2008, $3.57 for small property damage on December 11, 2008, $1.68 for postage on December 15, 2008, $3.67 for



a canteen purchase on December 18, 2008, $3.00 for a medical co-pay on December 23, 2008, and $2.00 for State Court restitution on January 6, 2009, leaving a balance of $6.43.  With respect to Plaintiff's canteen purchase on December 18, 2008, Hebert attests that this purchase consisted of mints, cream cookies, deodorant, soap, and envelopes.  A copy of Plaintiff's canteen records for this purchase is attached to Hebert's affidavit as Exhibit A.  See generally, Hebert Affidavit, with attached Exhibit A.

In opposition to the Defendant's motion and evidence, Plaintiff has submitted a twenty-six page  "Declaration" in which Plaintiff recounts the history of this case as well as some history of his grievance process at the Allendale Correctional Institution.  Plaintiff further states that the $8.35 restitution hold that was placed on his account is included in the balance and cannot be spent, and that as a result of that hold Plaintiff could not utilize the canteen to purchase anything for the month of January 2009.  Plaintiff states that during that month, other inmates received indigent supplies, while Plaintiff did not because the Defendants Hagan and Haselden refused to "correct that restitution as hold should not have included as balance".  Plaintiff complains that he did not receive indigent supplies until after February 13, 2009.  Plaintiff also discusses some of the claims which have previously been dismissed from this lawsuit by the Court's Order of September 11, 2012.

Plaintiff states that the Defendants should have corrected his balance to show that he was entitled to an indigent hygiene kit because, even though he did not have less than $6.43 in his account, since he had a hold on his account for an amount greater than that, he had no money he could spend and therefore was entitled to an indigent hygiene kit. Plaintiff further states that, with respect to his December 18, 2008 canteen purchase, he was "forced to put back canteen items and was only allowed to purchase three dollar and six seven cent from [the canteen] [and] was forced to

7



return additional items . . . .' Plaintiff states that the denial to him of indigent supplies in January 2009[5] violated his constitutional rights.

Plaintiff also attached several exhibits to his declaration, including copies of the relevant grievance, a copy of his account summary from January 20, 2009, a copy of a canteen receipt dated February 8, 2011 showing a void transaction with a weekly spending limit of three cents, a Request to Staff Member form dated March 2009 where Plaintiff was advised that, to be indigent, his E.H. Cooper account must fall below $6.43 for more than thirty consecutive days, and a Request to Staff Member form from May 2009 where was advised by the Defendant Hagan that they cannot lift the hold entered by headquarters, and advising him that the commissary will issue him an indigent/hygiene package. See generally, Plaintiff's Declaration, with attached Exhibits.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing

---

[5]Although Plaintiff's grievance alleges a denial of a hygiene kit in December 2008, the evidence before the Court indicates that Plaintiff purchased hygiene supplies from the canteen in December 2008, and Plaintiff clarified in his response to summary judgment that his claim is that he was then denied a hygiene pack as an indigent the following month; January 2009.



a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).  Here, after careful review of the arguments and evidence presented, undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

First, Plaintiff has presented no evidence whatsoever to support a claim for denial of access to the courts.  In order to proceed with this claim, Plaintiff must have evidence to show that he was prejudiced in a pending court proceeding because of improper conduct or actions by the Defendants.  Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010)["[A] prisoner must demonstrate actual injury from interference with his access to the courts - that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement."].  Plaintiff has provided no probative evidence, or even argument, to show that the Defendants' handling of his trust account funds impeded or prejudiced him in a pending legal case, or that any named Defendant engaged in conduct to prevent from accessing the courts to pursue a claim about the handling of his trust account.  Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993).  Therefore, to the extent



9

Plaintiff has asserted or intended to assert a claim for denial of access to the courts, any such claim is without merit and should be dismissed. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]; see Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue].

With respect to Plaintiff's claim alleging "misappropriation", there is no evidence of any misappropriation of any funds from Plaintiff's trust account by any named Defendant. Plaintiff's conclusory and unsupported statements that some type of unlawful "misappropriation" occurred does not constitute "evidence" that any such conduct or event actually occurred. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

As for his Plaintiff's claim that, as a result of a mischaracterization or misidentification of his correct trust account balance, he was denied an indigent hygiene pack in January 2009, the evidence presented shows that Plaintiff received hygiene packs in September 2008, October 2008, November 2008, February 2009, and March 2009. Hagen Affidavit, Exhibit B. Plaintiff also purchased hygiene materials from the canteen in December 2008. Hebert Affidavit, ¶¶ 14-15 and attached Exhibit A. With respect to January 2009, in order to have been considered indigent and therefore eligible for an indigent hygiene pack, Plaintiff's trust account balance, plus any deposits received, in the previous thirty day period must have been less than the cost of the

10



supplies in the hygiene pack, which was $6.43 during the relevant period. Hebert Affidavit, ¶¶ 7-8. The record is clear that on December 10, 2008, twenty ($20.00) dollars was deposited into Plaintiff's trust account, which resulted in a balance of $20.44. Plaintiff's balance remained over $6.43 from December 10, 2008 through January 5, 2008. Even on January 6, 2008, Plaintiff's balance was exactly $6.43.[6] Accordingly, the documentary and other evidence does not show that Plaintiff's trust account balance remained below $6.43 for thirty (30) days in January 2009.

Plaintiff appears to argue that the $8.35 restitution hold had not already been taken out of the listed "resulting balance", meaning that his net balance dropped to less than $6.43 on December 18, 2008 (resulting balance of $11.43 - $8.35 [restitution hold] = $3.08).[7] However, even assuming Plaintiff is correct and that he was *not* able to draw on his funds to purchase an indigent hygiene kit in January 2009, Plaintiff has still failed to present facts sufficient to establish a constitutional violation by any named Defendant. Plaintiff has presented no evidence to show that the Defendant Hagan had knowledge that Plaintiff was complaining about not receiving an indigent hygiene pack until, at the earliest, February 17, 2009, when Plaintiff wrote to Hagan on a Request to Staff Member form. Hagan Affidavit, Exhibit A. By that time, Plaintiff was already receiving hygiene packs. Hagan Affidavit, ¶¶ 7-8 and attached Exhibit B. Plaintiff has also presented no evidence to show that the Defendant Priester, who was an Inmate Grievance Coordinator during the

---

[6] The ledger only reflects balances from December 10, 2008 through January 6, 2009. Neither party submitted documentary evidence of balances beyond this time period.

[7] Although it is not completely clear from the record, the more logical conclusion from the evidence is that the "resulting balance" on the ledger for Plaintiff's trust account already reflects a deduction for the $8.35 restitution hold, as finding to the contrary would indicate that Plaintiff was allowed to continue to spend amounts which dropped his account balance below the restitution hold amount. Such a finding conflicts with the allegations and representations of the parties and the evidence in the file. See Hebert Affidavit, Exhibit A

11



relevant time period, had any knowledge about Plaintiff's complaint, or even had any responsibility or control over whether inmates received or were entitled to an indigent hygiene kit. See Priester Affidavit. To the extent Priester is named as a Defendant because she, as an IGC, was involved with this issue through Plaintiff's grievance, the grievance at issue in this case was not filed until August 2009, some seven months *after* Plaintiff had allegedly not received an inmate hygiene pack in January 2009.[8]

As for the Defendant Haselden, who was an accounting manager in the Division of Finance, Financial Accounting Branch, during the relevant time period, the Defendants have submitted evidence to show that accounting managers have no involvement with the issuance of hygiene packs or deciding whether or not a particular inmate is entitled to a hygiene pack. They only maintain the trust account records of deposits, expenditures and balances. Hebert Affidavit, ¶¶ 5, 11-12. The Defendants have also submitted evidence to show that, while accounting managers do handle institutional inquiries and inmate correspondence, a thorough review of the records of the Financial Accounting Branch do not show that Plaintiff ever made any inquires to Haselden or anyone else in the Financial Accounting Branch about his not receiving an indigent hygiene pack in January 2009 or about any concerns with his E.H. Cooper account. Id., ¶ 13. Plaintiff has provided no evidence to refute Defendants evidence on this point, or to show that he ever contacted Haselden or anyone else in the Financial Branch to inquire about the status of his account during the time period relevant to Plaintiff's Complaint. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997

---

[8]While Plaintiff has attached to his "Declaration" a copy of an earlier grievance concerning this matter which had been returned to him unprocessed as an exhibit, that grievance was not dated until February 2009, and in any event this Exhibit shows that it was processed by IGC "Pam Smith", not the Defendant Priester. See Plaintiff's "Declaration", attached Exhibit [Step 1 Grievance form dated February 2009].

12



WL 112833 (N.D.Ill. March 11, 1997)["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]. Rather, the only evidence of an inquiry Plaintiff has provided to the Court is his exhibit from March 2009 (showing receipt at the "Business Office" on April 1, 2009), in which Plaintiff requests a "correction" of his account balance and spending limit, with a response from an individual "M. Smart" advising Plaintiff how indigency is determined. See Plaintiff's "Declaration", attached Exhibit (Request to Staff Member form dated March 24, 2009).

Hence, even assuming for purposes of summary judgment that there *was* some miscalculation or misaccounting with respect to Plaintiff's trust account which caused him not to be issued an indigent hygiene pack in January 2009 when he should have been, Plaintiff has failed to present any evidence to show, or to create a genuine issue of fact as to whether, any named Defendant violated Plaintiff's constitutional rights as a result of this error or event. See, e.g., Riley v. Honeywell Technology Solutions, Inc., 323 Fed.Appx. 276, 278, n. 4 (4th Cir. 2009)[Holding that Plaintiff's "self-serving contentions" that he was treated unfairly "were properly discounted by the district court as having no viable evidentiary support"]; Nat'l Enters., Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000)[Holding that a self-serving affidavit was insufficient to survive summary judgment]; King v. Flinn & Dreffein Eng'g Co., No. 09-410, 2012 WL 3133677, at * 10 (W.D.Va. 2012)[Finding no genuine issue of fact where only evidence opposing summary judgment was "uncorroborated and self-serving" testimony], citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see Farmer v. Brennen, 511 U.S. at 837 [A defendant must have engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Pruitt v. Moore, No. 02-395, 2003 WL 23851094 at *9 (D.S.C. July 7, 2003) [only deliberate or



callous indifference on the part of prison officials to a specific known risk of harm states on Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); see also Shakka v. Smith, 71 F.3d 162,166 (4th Cir. 1995) [in order to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious", but the Defendant must also have acted with a "sufficiently culpable state of mind"]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."].

Therefore, Plaintiff's claims are without merit and should be dismissed.

## **Conclusion**

Based on the forgoing, it is recommended that the Plaintiff's "Dispositive motion" be **denied**, that the Defendants' motion for summary judgment be **granted,** and that this case be dismissed.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

August 8, 2013
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

